20-2796 from the Western District of Missouri, United States v. Herbert Green. Alright, Ms. Kurz. May it please the court. My name is Rebecca Kurz with the Federal Public Defender's Office on behalf of Mr. Herbert Green. In this case, police officers seized a package at a Federal Express facility, learned by conducting a canine search that the package contained drugs, and did a controlled delivery to the address on the package, which was Mr. Green's apartment. They ultimately arrested Mr. Green when he put the package inside the door of the apartment. There are several Fourth Amendment issues at work in this case, and I want to focus on two of them. The first being, when was the package seized from the Federal Express facility, and if we have time, was the protective suite pursuant to Bowie v. Maryland proper? There are two leading cases on when the seizure occurred. Those being Valeri, which is an en banc decision by this court, and then Alvarez-Manzo, a panel decision in which it interpreted Valeri. There are three things that make this case distinguishable from Valeri, where the court said that no seizure occurred. The first issue in determining whether a seizure occurs is, who is directing the action with respect to the seized item? Whether that be a piece of luggage in a common carrier case where Greyhound is delivering the luggage, or whether it's a mail package case like this one when FedEx has the package. Who is directing the action? Alvarez-Manzo looks specifically to whether any Greyhound employee told a police officer, take that piece of luggage and enter the passenger compartment of the bus and question Mr. Alvarez about it. They wanted a specific direction from the common carrier with respect to the item seized and directing what was done with that. Here, Federal Express did not tell Detective Garcia, the officer who seized the package, they did not give him any direction as to what actions he was to take. The Federal Express policy in this case, in essence, was if you are going to do canine searches of packages, don't do them by the conveyor belt, don't do them by our employees, take them over here. Why isn't that sufficient to be a direction by FedEx? It is Detective Garcia who is laying down all of the requirements for when it's actually going to be seized. What are the criteria? Are the addresses invalid? Are the phone numbers on it invalid? Does it have glue on it? Does it have tape on it? Those are things that Detective Garcia is deciding on his own. He controls the action. In Alvarez-Manzo, the court said it's not about where a package or a piece of luggage is taken, it's about who directs it to be taken. Here, it's Detective Garcia. I think the strongest ground for distinguishing Valery from this case is asking the question, was there a meaningful interference with the possessory interest? Valery says mere trespass on property alone is not enough. It must be meaningful. It can't be inconsequential. It's important to look at how Valery framed the issue in that case. Throughout the opinion, it's framed this way. They say, we ask whether the officer's removal of a best passenger's checked luggage from the luggage compartment to a room inside the terminal, and here's the important part, to seek the passenger's consent to search the luggage constitutes some meaningful interference with the possessory interest in the luggage. In Valery, law enforcement officers let the passenger have the final say with respect to his possessory interest in the luggage. He could consent to a search, or he could not consent to a search. In other words, he still had dominion and control over the luggage for purposes of preventing the police from learning what was inside of the luggage, the contents. Valery is a consent case, whereas here we have a canine sniff case, which was also true in Alvarez-Manzo. In Valery, while it's true that they moved the luggage, that's a mere trespass in that instance, because they honored the best passenger's possessory interest by seeking his consent. The court said it makes little difference whether the luggage was brought from the bus inside the terminal or whether they could have asked the defendant to walk outside to the bus, which he wasn't supposed to be in that area, to identify his luggage. They said there's nothing meaningful there. There's no meaningful distinction. In footnote 9 of Valery, there's a discussion about the Supreme Court case and decision in Jacobson. The Valery court said, in that case, the DEA agents were not going to return the package to Federal Express until after the agents searched the package and tested the white powdery substance. The same is true here. When Detective Garcia was not going to return that package, either to FedEx or to Mr. Green, until he had done the canine sniff. So when an officer says and takes physical control of a package and says, I'm taking this, I'm not going to give it back to you unless my canine does an alert to it. The officer is asserting dominion and control. He has the package and he's indicating he may not give it back to you. Counsel, how is that more than a minimal intrusion for the brief period of time that was involved in this case for the officer to take the package some feet away and have the canine sniff? The minimal intrusion is not so much what was done physically, but what does the intrusion get the officer and its information. Doesn't it have to interfere with the delivery in some way in here had there not been a positive test, a sniff, the package would have gone back and gone on its way to whomever it was addressed. If there wasn't a positive sniff, that's true. But what I'm trying to point out is what makes something a meaningful trespass, what makes it significant, and therefore a seizure, is the combination of two things. The physical intrusion on the personal effect plus what the officers are obtaining. When they can't obtain that information without the physical intrusion, that's when it becomes meaningful. Take, for example, the Supreme Court's decision in Jones, which was the GPS tracking device. Putting the GPS tracking device on the defendant's vehicle in that case was a trespass, although a very minor one. It didn't convert the vehicle. It didn't deprive him of possession of the vehicle. It's simply they physically invaded that area and put the GPS tracker on there. Why it was a search and ultimately found to be an illegal search was because it got the officer's information, i.e. the movements of the defendant by the tracking, that they could not obtain otherwise. It's not so much what the physical intrusion is. It's what does the physical intrusion get you and could you have gotten it otherwise. Take also, for example, the Supreme Court's decision in Florida versus Jardim. That was the case where officers thought that there was a drug operation going on in a house, so they decided to get a canine dog to do a drug sniff. They walked up to the front porch of the house and had the dog sniff around the door and try and detect the odor of narcotics, which he did. Even though a canine sniff is not a search, the Supreme Court said, I should say,  The Supreme Court said in Jardim that was a search and it had to do with the reasonable expectation of homeowners. Anyone has an implied license to walk up a sidewalk, knock on a front porch... This is a package case, not a home case. True, but also in Jardim it says the home is first among equals. Effects are specifically named in the Fourth Amendment. And Jacobson already says that effects are protected. Mail is protected. So while I agree with you that the home is the core of the Fourth Amendment, effects are specifically enumerated in the amendment. Is your position that the methodology used here by law enforcement is per se a constitutional violation, that this type of approach of selecting packages from a conveyor belt at a shipping company for dog sniff, that that should be per se violative of the Fourth Amendment? Or was there something specifically defective in the handling in this case? Well, I'm not saying that it's per se violative. The government suggests that the rule I'm asking for is that Federal Express must initiate the searches and then give direction to the law enforcement officers. That's not what I'm saying. My rule simply is an officer must have reasonable suspicion before he removes a package from a conveyor belt with the intent I'm going to gain information as to the contents of that package through a canine sniff. So it's not per se violative. I'm not saying, look, basically you can't do drug interdiction at FedEx facilities. I'm saying of course you can do drug interdiction, but you at least have to have the very minimum standard of reasonable suspicion. And they didn't have that in this case. And I don't want to spend a whole lot of time talking about reasonable suspicion because it's briefed pretty thoroughly by both parties. But all Detective Garcia saw here was some glue at the edges of the package. It came from a source city, and he said it was a heavy-duty cardboard box. That's it. In most of the cases in this circuit, there are more factors than that that provide reasonable suspicion. I see that I'm in my rebuttal time. I'm not going to have time to get to the buoy argument, so I'll reserve my remaining time. Thank you. Thank you, Ms. Coors. Mr. Hurst? May it please the Court, Ben Hurst for the United States. The question of when a seizure occurred at the FedEx facility in this case is on all fours and truly has no meaningful distinctions from that case in Valerie. The question is not whether officers interact physically with the package because we know that not all physical interaction is of Fourth Amendment significance. The question is about meaningful interaction. In a case like this involving packages, that boils down to two factors. Did the officers delay delivery? It's not really in dispute here because we know that if the dog had not alerted to the package, they would have gone on its way and been delivered on time. The second question is, was there a deprivation of the carrier's custody of the package? And the question is determined by, does the officer treat the package in a way that a reasonable person would expect FedEx to treat the package? Here, we should look directly at Valerie, and what does Valerie say? It says that when officers are interacting within, with luggage or packages in the carrier's space, and they're doing so under terms set by the carrier, that is all that's required to maintain the carrier's custody. So in Valerie, the officers take the package or the luggage from the bus inside the room in the terminal. Why? Because that's where Greyhound wants them to take the package. Similarly here, Detective Garcia takes the package from the conveyor belt to the rear of the warehouse. Why? Because FedEx does not want officers to have canines near the conveyor belt. And these are the two factors that the court has looked at in Valerie, and they really do compel the result in this case, that there was no seizure until the drug dog alerted to the smell of the package. Both parties have talked about Alvarez-Manzo, and Alvarez-Manzo doesn't compel a different result. And the reason is because you have to ask the question, and in fact, Alvarez-Manzo asks this question, not about who is deciding to investigate. That's not the relevant question. As Alvarez-Manzo makes clear, Greyhound, as it's talking about Valerie, Greyhound was directing the action, quote, in terms of what law enforcement could do with Valerie's bag. Could do. Not what they must do, not what they were required to do. In Valerie, it was they were allowed to, and in fact, directed to take the bag to the terminal. Here at FedEx, they were directing the officers to do canine sniffs in the rear of the terminal. And the question, really sort of one step back from this, why are they doing that? And it's like Valerie recognizes that in, it calls officers' law enforcement's duty to protect commercial transportation a solemn duty. And that's why we have a situation where law enforcement is permitted to come onto the premises of a common carrier and conduct law enforcement activities, but they must do so as long as they're doing so and moving the packages about in the warehouse under terms set by FedEx, they don't seize the package. And I hear the distinctions that Mr. Green is trying to draw in this case. I sort of see them as two. One is, well, a dog sniff is just different, but that's not what the court held in Zacher. In Zacher, the officers took the package off the conveyor belt and put it on the ground. And this court said, that's not a seizure because that's exactly what FedEx could do with the package.  What happened was that the officers did a dog sniff on the package. And so it's implied, if that were a thing that people could not accept or recognize that could be done by officers at a FedEx, and if that caused a seizure, if that was something that FedEx is a reasonable customer wouldn't expect, Zacher would have come out a different way, but that's not how it came out. And so it's the question of it being a dog sniff and being some kind of additional intrusion is a question that just doesn't square with the way that Zacher came out. Before you move to another subject, and while this is fresh on my mind, would you address the existence of reasonable suspicion based on at least what seems to have been briefed? I assume there's nothing else, but it seems, could you have authority for glue and source city being essentially sufficient for, and the type of box being enough for reasonable suspicion? Your Honor, the reasonable suspicion inquiry is always going to be highly fact specific, and it's going to be, for that reason, difficult to come up with a case that has the exact same facts as this case. What I can say to Your Honor is that for all three of those factors, this court has held that each of those factors supports reasonable suspicion combined with other factors. Obviously, we don't have a case that's on all fours, and I would love to give that to you if I could have found it. But I'll say this. It is not a mere question of counting up factors or of noting the many different factors because factors have different weights. Here we have an officer who's been in the interdiction business for 18 or 19 years. It is what he does. He works at FedEx and USPS, and that is his role as a law enforcement officer. And what he testified to in this testimony, while it was challenged in the terms of whether he could seek glue, there's no dispute that his testimony that every time he's found glue on a package, that package has contained drugs. And that is one of three factors, but it's a very weighty factor. It's a strong factor. And if you put that together with Drug Source City and the fact that he testified that it's his experience that drug traffickers use boxes that are sturdier, I would submit enough. And the important thing to recognize about reasonable suspicion is that the court has said it's not probable cause. It's not beyond a reasonable doubt. It's not preponderance of the evidence. It's just enough that the officer can articulate why it is he finds that the package is suspicious. And Detective Garcia's testimony in light of his experience and training was more than sufficient to cover that ground here. And I'll add one point to that, Your Honor, because it goes to the question of what reasonable people expect at FedEx. This is a package, as Detective Garcia explained, that people who ship drugs seal packages down because they are concerned about the smell of that package attracting attention by a dog. And so in this case, it was also true that when they opened the package up, they found mustard put underneath the saran wrap that was put inside with the marijuana. All of that is there because people who ship things expect that drug-safing dogs are a part of common carrier existence. And that's part of law enforcement's solemn duty to protect commercial transportation. Counsel, I'd like to turn to the protective sweep, if we could, for a while. It was my understanding that when the undercover officer made the controlled delivery of the package to Green's apartment, that he determined there was no one home. Then Green comes home, puts the package inside the door, and leaves. So my question is, what factual basis was there for a reasonable suspicion that there were dangerous individuals present before the protective sweep was initiated? Your Honor, I think I would... I'm not sure I would necessarily agree with your premise that he determined that no one was home. I believe what he determined was that he knocked on the door and no one answered, which I don't necessarily take to be the same thing. But I put that... So I'll answer your question to begin that way. But moving on from that, I think that, Your Honor, when they enter the building, at that point, they have a search warrant to search the entire apartment. And they have a second search warrant to search the entire apartment for the box. I'm sorry. And then they have a search warrant to open the box and search it. And when they open the door, the team that... So when they're preparing to sweep the apartment, incidents of searching it for the box. Well, they open the door and they find the box right there. And at that point, I submit to Your Honor that this is a case that's not unlike where they have a search warrant to find a box, and then they find the box where they're looking for it. This is a case that's very similar to Bowie in that if that person had been the subject of an arrest warrant, there would have been two different kinds, or two different warrants. Green wasn't there, so why wouldn't the permissible scope of the projected sweep here have been the immediate area of the package? They found the package immediately when they opened the door. It seems to me that the duration would only be so long as necessary to remove the package because that was the only thing that the warrant covered. Your Honor, I have two thoughts about that. I think there's actually kind of two pieces that you've uncovered there. The first is that they had... There are two things that's going on. When you find the package, every time you execute a search warrant, it is not merely the fact that you found a thing, but where you found it and the circumstances around it that are all of evidentiary significance. So the officers aren't required to grab the package and snatch it up and then leave. They need an opportunity to secure the package, to take photos of the place where the package is. All of those things take a certain amount of time. The second piece... The Supreme Court has said that this could only be a cursory sweep, and they spent 10 to 15 minutes with multiple officers going through every room of the apartment. Meanwhile, they leave the package sitting right in front of the front door where they found it. It seems they've gone well beyond the scope of a projected sweep. They looked in a shoebox, a trash can, cupboards, multiple officers for an extended period of time. How is that a projected sweep? Well, Your Honor, there's extensive testimony at the suppression hearing that when the officers looked in a place, that's a place that they found some person before. So when they're talking about cupboards, they're talking about this place between the mattress and the box spring, or the dresser that officer testified. These are officers who do a lot of sweeps, and they find people in all sorts of unusual places. And with respect to the shoebox, I think there was a little bit of... It's just not clear whether the shoebox was open or closed. That's a point that the District Court recognizes in its order. And so that's a thing that could have been in plain view. It might not have been. But with respect to the trash can, that's a thing they looked on top of it. They looked in places where a person could be found. And so that's a reasonable part of securing officer safety. And I'll note one thing more on that, Your Honor. With respect to identifying the location that a package is when you find it, that's not something that requires justification as part of a sweep. That's incident to the execution of the search warrant. And the same thing goes here. They didn't just have a search warrant to search for the box. They had a search warrant to search in the box. And that was not implied in that search warrant that they had to grab the box and run out or that they were required to do so without looking around them to secure areas from which an attack could be immediately launched. And what the court says in Bailey is that serving or executing search warrants on narcotics operations is dangerous business. And the officers had made multiple pieces of evidence here that suggested not only that this was a place where multiple people might be involved, a drug operation where multiple people might be involved, that it might be a drug operation. It might be dangerous. And that includes the fact that there was a 35-pound box that smelled like drugs, the fact that when the officer overheard the defendant's phone call, it had two pieces of information. One, the box, that is a specific box that officers were or that the defendant and his correspondent previously understood. And two, that the box was here. That is, the officer or the defendant and his correspondent understood what here means. Both of those terms were previous. There was previous agreement about what those things meant. If you put that together with the heat sealer that they saw in plain view during a sweep of... Counsel, I think you're jumping to all kinds of conclusions here. What did the purpose of the warrant end? It seems to me the purpose of the warrant ended when they found the package, which was immediately. Well, Your Honour, there's two warrants. There is a warrant to find the package and there's a warrant to search the package. So the purpose of... Why warrant search if you already know where it's at? No, to open the box up, that is, Your Honour. To search the apartment for the package and a second warrant to open the package and search it. And the officers were... So the first warrant involves documenting where the package is. That's not a thing that can just be done immediately. Officers have to have time to do the investigation, to photograph where things are, and that implies an ability... So, Counsel, how do we distinguish a search from evidence which our President says is impermissible from what happened here? Well, here, Your Honour, the officers had a warrant to search for the box. That's the gold standard of Fourth Amendment. They went to a magistrate before they ever went to the apartment. They told the magistrate why they thought that box was going to be in there and the magistrate said there was probable cause. So that search was absolutely justified. And that includes the ability to photograph where the package is when you find it. And then there is a second search warrant, a second Fourth Amendment gold standard, probable cause determination by a magistrate, that the box itself contained evidence. And they had an opportunity and, in fact, a reason to open up that box and figure out what was in it. And there's no reason to think that they have to just snatch the box and run out of the apartment building as soon as they find it. That would not be reasonable. The touchstone of Fourth Amendment law is reasonableness. And the court shouldn't apply doctrines whose purpose is to serve the value of reasonableness in a way that creates, that would require officers to do, that would prohibit officers from being reasonable in the way that they were here. I see that my time is running out. I don't have any additional points. I'm happy to answer any questions the court has. But if there are no more, I would ask the court to affirm the district court's denial of motions to suppress. Thank you. Thank you, Mr. Hurst. Ms. Kurz? You're muted. Do I have sound now? Yes, you do. Thank you. I wanted to apologize first to the court and to Mr. Hurst. I apologize for moving around while Mr. Hurst was speaking. I was about to lose power on my laptop and I was panicking trying to get it hooked back up. What the government says in its brief about the buoy sweep is a little bit different than what it is saying in the argument. In the brief, what the government asked this court to do is to significantly expand buoy to non-arrest situations and allow a sweep in the immediate vicinity of a package without reasonable suspicion to believe that anyone else is present. That is a huge expansion. The Eighth Circuit has already said in Waldner and in Rodriguez that they're not going to expand into non-arrest situations in that manner. Waldner was the service of a temporary protection order. Rodriguez was a consent search. In Rodriguez, the court said, well, some other circuits have expanded in this way but only under the second prong of buoy, never the first prong. The first prong of buoy is the automatic sweep you get when you're in the general area of the person being arrested. Counsel, what would be the effect of invalidating the sweep in this case? We invalidate the sweep and you don't have the gun under the mattress which was one of the guns to which he pled guilty for using a firearm in furtherance of drug trafficking operation. Counsel, wouldn't we need to remand under the Kabir case for determination by the district court whether they would have sought a warrant had they not entered in this manner? No, I don't think remand is appropriate here because the government did not raise the independent source doctrine below. I discussed it somewhat in my brief but I don't think that cures their failure to raise it in the district court. Also, as far as the Leon good faith exception, Rodriguez says that Leon good faith cannot be applied. If the sweep is bad, in order for Leon to apply, the pre-warrant conduct of officers cannot be clearly illegal. Rodriguez addresses that specifically and says in a bad sweep case that by not following buoy, by not circumscribing it, you can't apply Leon. I see that I'm out of time. I'm happy to answer questions. Otherwise, I'm finished. Thank you, Ms. Kurz. Thanks both counsel, Mr. Hurst as well, for the argument you provided to the court. It's been very helpful. We will continue to study the briefing and render decision in due course. Thank you both.